IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FREDDIE LEE CLAYTON, § | | |
| PLAINTIFF, § | | |
| § | | |
| v. § | No. 3:09-CV-2048-D | |
| § | ECF | |
| GARLAND POLICE DEPT., et al., § | | |
| DEFENDANTS. § | | |

### Findings, Conclusions, and Recommendation of the United States Magistrate Judge

Freddie Lee Clayton ("Plaintiff") filed this suit against the Garland Police Department, four Garland police officers, the Dallas County Sheriff and the Dallas County District Attorney. All the defendants have been dismissed except Garland Police Officers B.N. Worsham, Detective Hatfield, and Lt. Vancleave ("Defendants"). The District Court referred Defendants' Motion for Summary Judgment based on qualified immunity (doc. 53) to the United States Magistrate Judge for recommendation. Plaintiff failed to file a response, and the time to do so has expired. For the reasons that follow, the Court recommends that the District Court grant Defendants' Motion for Summary Judgment and enter judgment in favor of Officer Worsham, Detective Hatfield, and Lt. Vancleave.

### Background

During the late hours of October 27, 2007 or early in the morning on October 28, 2007, someone murdered Ceola Sampson ("Sampson") in her apartment. Plaintiff had been doing drugs with Sampson the evening before, and witnesses reported that he was the last person who had been seen with Sampson. Investigators with the Garland Police Department interviewed Plaintiff, and after initially denying even knowing Sampson, Plaintiff admitted that he had been in her apartment

on the evening of October 27, 2007, using drugs with her. He also admitted striking Sampson. Magistrate S. Galbraith issued an arrest warrant for Plaintiff at 8:42 p.m. on October 28, 2007. Garland Police Officers executed the arrest warrant at 10:00 p.m. that evening. Plaintiff was booked into the Garland Detention Center, charged with Sampson's murder, and his bond was set at $500,000. Plaintiff was also held on a warrant issued by the Texas Department of Criminal Justice Austin Parole Division.

On the morning of October 30, 2007, Plaintiff was taken before the Magistrate and then transferred to the custody of the Dallas County Sheriff's Office. Following dismissal of the charges and Plaintiff's release from custody, he brought this action against Defendants, asserting claims under 42 U.S.C. § 1983, and state law claims of false arrest and false imprisonment.

## **Standard of Review**

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts will preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support his motion with evidence negating the non-movant's case. Rather, the movant may satisfy his burden by pointing to the absence of evidence to support the non-movant's case. *Little*, 37 F.3d at 1075. Once the movant meets his burden, the non-movant must show that summary judgement is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "[A properly

supported summary judgment motion] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. *See* FED. R. CIV. P. 56(e). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

Rule 56(e) permits a proper summary judgment motion to be opposed by the non-movant as set out in FED.R.CIV.P. 56(e). If the party opposing summary judgment does not respond, the court may grant summary judgment if the movant has made a prima facie showing that it is entitled to relief. *Eversly v. Mbank,* 843 F.2d 172, 174 (5th Cir.1988); FED.R.CIV.P. 56(e). Nevertheless, a court may not grant a default summary judgment simply because the non-movant has failed to respond. *Eversly,* 843 F.2d at 174; *Tutton v. Garland Indep. School Dist.,* 733 F.Supp. 1113, 1117 (N.D.Tex. 1990). The court may, however, accept the movant's evidence as undisputed. *United States v. $252, 671.48 in U.S. Currency,* 734 F.Supp. 254, 256 (N.D.Tex.1990); *Tutton,* 733 F.Supp. at 1117. The court must then determine if the movant has made a prima facie showing of its entitlement to summary judgment based upon the movant's undisputed evidence. *Vega v. Parsley,* 700 F.Supp 879, 881 (W.D. Tex.1988). In this case, the Court will accept Defendants' summary judgment evidence as undisputed.

3

## Undisputed Facts[1]

A dispatcher sent Garland police officers to check out a disturbance inside 1725 Apollo Road #211, Garland, Texas on October 28, 2007 at 8:14 a.m. A caller to 911, later determined to be Almarez ("Almarez"), had told the dispatcher that a loud verbal and physical disturbance was taking place inside the location. When officers arrived, they found Sampson's body and determined that she had been murdered. (Aff. for Arrest Warrant ¶1, app. at 2.) On October 28, 2007, at approximately 5:00 p.m., Detective Hatfield and Lt. Vancleave interviewed Almarez. (Aff. for Arrest Warrant ¶¶ 2 and 3, app. at 2.) Almarez stated that he and a person he knows as Freddie encountered Sampson and that Freddie and Sampson knocked on his door around midnight asking Almarez if he "had any smoke." Almarez stated that he met Freddie and Sampson at Sampson's apartment early on October 28, 2007, and the three of them smoked marijuana together. Almarez stated that he and Freddie were not friends, but that Freddie and Sampson knew one another and were being very friendly toward each other. Almarez stated that he could hear Freddie and Sampson talking about cocaine. Almarez stated that he left the apartment around 2:30 - 3:00 a.m. and went home. (Aff. for Arrest Warrant ¶ 3, app. at 2.)

Almarez stated that he woke up around 7:45 a.m. that morning, found that he still had some marijuana left, and decided to stop and see if Freddie and Sampson were still up and wanted to smoke with him. Almarez stated that he knocked on Sampson's door for a few minutes and no one

---

[1] These facts are taken from the "Undisputed Facts" portion of the Def.s' Mot. for Summ. J., filed in accordance with Local Rule 56.1(a)(1) of the Northern District of Texas. Plaintiff has not filed a response to Defendant's motion. Consequently, the "Undisputed Facts" contained in Defendants' pleading are admitted for purposes of Defendants' motion for summary judgment. *Gaspard v. Amerada Hess Corp.,* 13 F.3d 165, 166 n. 1 (5th Cir. 1994); *Eversley v. MBank Dallas,* 843 F.2d 172, 174 (5th Cir. 1988).

answered. Almarez reported that he then heard a loud eerie scream from a female and knew someone needed help. Almarez stated that he then knocked again and heard a thumping or pounding sound. Almarez stated that at that point, he backed away from the door and called 911. (Aff. for Arrest Warrant ¶ 3, app. at 2.)

While some of the officers interviewed Almarez, other Garland officers located Freddie at a location Almarez had identified. At first, Freddie lied to the officers about his identity, giving them a false name and a false date of birth. (Aff. for Arrest Warrant ¶4, app. at 3; Pl.'s deposition at 22, lines 2-6, app. at 13.) Freddie, who was eventually identified as Freddie Lee Clayton, agreed to ride with officers to the police department to meet with the detectives. (Aff. for Arrest Warrant ¶4, app. at 3; Pl's deposition at 19, lines 11-22, app. at 12.)

First, Detective McNear and Lt. Vancleave interviewed Freddie. He denied knowing Sampson or ever having been at her apartment. (Aff. for Arrest Warrant ¶4, app. at 3.) Later in that same interview, Freddie admitted that he had been in Sampson's apartment the night before she was murdered and that he and Sampson had used drugs with Almarez. Freddie stated that he and Almarez left the apartment at the same time, approximately 10:30 or 11:00 p.m. Because of the discrepancies between Freddie's and Almarez's stories, the Garland officers continued their interviews. (*Id.*)

When the detectives asked Freddie how his DNA got on Sampson, he stated that they had hugged, kissed, and danced. Freddie continually changed material facts and details of his story and said that a drug dealer had put a hit out on Sampson because she had not paid him for some drugs. Freddie later stated that a "big" drug dealer came to the apartment and pulled a gun. Freddie said he heard a shot and left the apartment. Freddie also stated that the drug dealer beat Sampson

5

unconscious, but that Freddie was not in the apartment when that happened. (*Id.*)

Later, Freddie told Detective McNear that Sampson had picked up a knife from the kitchen counter and tried to cut him. Freddie stated he took the knife from Sampson and punched her, to get her away from him. Freddie reported that Sampson fell down. He said that eventually, Sampson stood up, announced that she was going to bed, and walked Freddie to the door. (Aff. for Arrest Warrant ¶5, app. at 3.)

While the detectives were interviewing Freddie, Magistrate S. Galbraith issued an Arrest Warrant for Freddie. (Aff. for Arrest Warrant ¶4, app. at 3.) Detective McNear was given the arrest warrant for Freddie at 8:42 p.m. on October 28, 2007 and executed that arrest warrant at 10:00 p.m. that same evening. (Arrest Warrant for Freddie Lee Clayton, app. at 7.)

## Analysis

Plaintiff alleges that "[t]he defendant's [sic] caused and subjected plaintiff to false imprisonment, illegal arrest, arrest on a false charge and illegal confinement." (Pl.'s "Statement of Claim," Compl. at 2.) Plaintiff seeks damages under 42 U.S.C. § 1983 and Texas law arising from his arrest and detention for Sampson's murder.

## Qualified Immunity

With respect to Plaintiff's § 1983 claim, Defendants have raised the defense of Qualified Immunity. A government employee may assert the affirmative defense of qualified immunity to a suit for a civil rights violation under § 1983. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages--to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457

6

U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Immunity questions should be resolved at the earliest possible stage in the litigation because qualified immunity extends to immunity from suit, not merely immunity from liability. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question." *White,* 959 F.3d at 544.

A court considering whether a defendant is entitled to qualified immunity conducts a two-pronged inquiry. One prong entails a court's consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 818 (2009). The other prong requires a court to determine within the specific context of the case whether the violated constitutional right was clearly established at the time in question. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The court has discretion to decide which of the two prongs to address first based upon the circumstances of the case. *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and the clearly established question in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410. Current law applies to the constitutional violation, but the law at the time of the incident applies to the clearly established prong; therefore, two different tests may be applicable in a given case. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

Although qualified immunity is normally an affirmative defense, once it has been properly

7

raised, the plaintiff has the burden to negate the defense. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Bazan ex rel. Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001). This done, the burden shifts to the plaintiff to rebut the qualified immunity defense. *Id*.

In this case, Defendants properly raised the issue of their qualified immunity; therefore, the burden of negating that defense lies with Plaintiff, even on summary judgment. *See Id.* at 490.

"The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir. 1994). "Probable cause to arrest exists 'where the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *United States v. Preston,* 608 F.2d 626, 632 (5th Cir. 1979) (quoting *Draper v. United States,* 358 U.S. 307, 313 (1964)). The probable cause determination must be made, "not with the logic of cold steel, but with a common sense view to the realities of everyday life." *United States v. Lee,* 962 F.2d 430, 435 (5th Cir. 1992) (citing *Brinegar v. United States,* 338 U.S. 160, 175 (1949)). Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient to cause a reasonable person to conclude that the suspect committed the offense. *United States v. Levine,* 80 F.3d 129, 132 (5th Cir. 1996). A court must examine the totality of the circumstances to determine whether probable cause existed. *Mendenhall v. Riser,* 213 F.3d 226, 231 (5th Cir. 2000).

The arresting officer himself need not have personal knowledge of all of the facts. *Lee,* 962

F.2d at 435. Rather, when officers have communicated, probable cause may rest upon the officers' collective knowledge. *Id.* "[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.'" *United States v. Shaw,* 701 F.2d 367, 376 (5th Cir. 1983) (quoting *United States v. Edwards,* 577 F.2d 883, 895 (5th Cir. 1978) (en banc)).

An affidavit that supports an arrest warrant is entitled to a presumption of validity. *Franks v. Delaware,* 438 U.S. 154, 171 (1978). If all of the circumstances demonstrate probable cause, an affidavit does not need to contain every detail that the affiant knows. *United States v. Brown,* 941 F.2d 1300, 1304 (5th Cir. 1991). Magistrate judges and courts must use common sense and realism to test and interpret affidavits for arrest and search warrants. *United States v. May,* 819 F.2d 531, 535 (5th Cir. 1987) (citing *United States v. Ventresca,* 380 U.S. 102, 107 (1965)). Police often operate "in the midst and haste of a criminal investigation." *Ventresca*, 380 U.S. at 108. A reviewing court should pay great deference to the magistrate's ultimate determination of probable cause. *Id.* "[A]n arrest is not unconstitutional merely because the information relied upon by the officer later turns out to be wrong." *Sauls v. Welch*, No. 3:05-CV-0409-D, 2007 WL 2254938, *7 (N.D. Tex. 2007) (Fitzwater, J.); *BeVier v. Hucal*, 806 F.2d 123, 126 (5th Cir. 1986) (citing *Henry v. United States,* 361 U.S. 98, 102 (1959) ("Evidence required to establish guilt is not necessary."); *McKinney v. George,* 726 F.2d 1183, 1187 (7th Cir.1983)). The Constitution does not guarantee that only the guilty will be arrested. *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

Although a valid arrest warrant would normally insulate officers against a claim for false arrest, when the officers charged with false arrest were responsible for securing the warrant, the court is required to test the validity of that warrant, applying the usual standards. *See Malley,* 475

U.S. at 345-46. The issue is "whether a reasonable well-trained officer in [the Defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* at 345. If no officer of reasonable competence would have requested the warrant and if the magistrate issues the warrant, then the officer's "action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty." *Id*. at 346 n. 9. *See also Bennett v. City of Grand Prairie*, 883 F.2d 400, 408 (5th Cir. 1989). But, if officers of reasonable competence could disagree on this issue, immunity should be recognized. *Id*.

To survive summary judgment on his § 1983 claim, Plaintiff must adduce evidence such that a reasonable jury might find that Defendants violated his federal constitutional rights, and if he does so, the Court must decide whether the constitutional right was clearly established at the time.

When Officer McNare, a former defendant who has been dismissed from this case, and Lt. Vancleave first interviewed Plaintiff, he continually lied to the officers, beginning with the basic question, "What is your name?" Officers had already interviewed all the people around Sampson's apartment and knew Plaintiff had been the last person seen at Sampson's apartment. Plaintiff admitted in his deposition that he could understand why the Garland officers reasonably believed he was the person who had committed the murder, given all the lies he had told them about his involvement with Sampson in the hours before her murder. (Pl.'s deposition at 50, line 20 - page 51, line 5, app. at 14 - 15.)

Detective Hatfield believed that Plaintiff was responsible for Sampson's murder based, in part, upon Almarez's statements about he and Plaintiff having been at the victim's apartment on the night of October 27 and into the morning of October 28. Almarez made the 911 call at approximately 8:12 a.m. to report the disturbance and stated that Plaintiff was the only other person

10

at the apartment when he left. Other interviews revealed that Plaintiff was observed near Sampson's apartment at approximately 7:45 a.m. coming from the store with a beer and walking around the complex rather than through the complex where police were present. During Plaintiff's interviews, he changed his story numerous times about where he was and what time he went home, casting even more suspicion on his story. He admitted to punching the victim and knocking her down, later denying that he ever said that he punched Sampson. Plaintiff also inconsistently reported Sampson's behavior after she attacked him with a knife.

Plaintiff has failed to raise a genuine issue of material fact contesting Defendants' position that, based upon the investigation and facts upon which Defendants relied, a reasonable officer could have believed that the affidavit for the warrant established probable cause and that Plaintiff's arrest was lawful, in light of clearly established law and the information the arresting officers possessed. Under the uncontested facts, Defendants are entitled to qualified immunity based upon their failure to violate any of Plaintiff's constitutional rights. Defendants are entitled to judgment on Plaintiff's claim pursuant to 42 U.S.C. § 1983.

### Official Immunity

With respect to Plaintiff's state law claims, Defendants have raised the defense of official immunity. Under Texas law, "[g]overnment employees are entitled to official immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W. 2d 650, 653 (Tex. 1994). "Texas' law of qualified or official immunity is substantially the same as federal immunity law," with the caveat that Texas' test focuses solely on the objective reasonableness of the officer's conduct. *Cantu v. Rocha*, 77 F.3d 795, 808 (5th Cir. 1996). "[O]fficial immunity

11

hinges on whether the official's activities were undertaken in 'good faith,' that is, whether they were objectively reasonable." *See Hart v. O'Brien*, 127 F.3d 424, 450 (5th Cir. 1997), abrogated on other grounds by *Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999).

An official must prove that a reasonably prudent official might have believed that his action was appropriate under the circumstances to obtain official immunity. *Murray v. Earle*, 495 F.3d 278, 294 (5th Cir. 2005). If a reasonable officer, under the circumstances, could have believed that what he was doing would not violate a suspect's rights, then he or she is entitled to official immunity. *Id*. Negligence alone will not overcome a showing of good faith on the official's part. *Id*. On summary judgment, to controvert an officials proof of good faith, the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *City of Lancaster*, 883 S.W.2d at 657. If officers of reasonable competence could disagree on the issue, immunity should be recognized. *Casanova v. City of Brookshire*, 119 F. Supp.2d 639, 667 (S.D. Tex. 2000).

With respect to Plaintiff's state law claims of false arrest and false imprisonment, Defendants have plead the affirmative defense of official immunity. In order to establish civil liability for false arrest or false imprisonment, a plaintiff must show a wrongful interference with his freedom. *Montgomery Ward & Co. v. Garza,* 660 S.W.2d 619, 621 (Tex.App.—Corpus Christi 1983, no writ). In this case, the elements of false arrest and false imprisonment are similar enough to be indistinguishable. *See Tovar v. United States*, No. 3:98-CV-1682-D, 2000 WL 425170, *10 (N.D.Tex. 2000) (citing *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 754 (Tex.App.–Corpus Christi 1998, writ denied). The elements of a common law claim of false imprisonment are: "(1) willful detention; (2) without consent; and (3) without authority of law." *Wal-Mart Stores, Inc. v.*

*Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). The plaintiff must establish there was no legal authority or justification for the arrest or detention. *Sears Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375-76 (Tex. 1985). "If the alleged detention was performed with the authority of law, then no false imprisonment occurred." *Wal-Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998). The test for an official's good faith is substantially derived from the test for good faith in a qualified immunity claim for federal constitutional violations. *Roe v. Tex. Dep't of Protective and Regulatory Servs.*, 299 F.3d 395, 413 (5th Cir. 2002). If a reasonable officer, under the circumstances, could have believed that what he was doing would not violate a suspect's rights then the official is entitled to official immunity. *Murray v. Earle*, 405 F.3d 278, 294 (5th Cir. 2005).

If an arrest or detention is executed under process which is legally sufficient in form and duly issued by a court of competent jurisdiction, an action for false arrest or false imprisonment will not lie. *James v. Brown*, 637 S.W.2d 914, 918 (Tex. 1982). In this case, Defendants were performing discretionary duties in good faith and were acting within the scope of their authority. They acted under a warrant for Plaintiff's arrest that was legally sufficient in form and that had been duly issued by a magistrate, a court of competent jurisdiction. Defendants have shown that they are protected by Official Immunity against Plaintiff's state law claims.

## **Conclusion**

Defendants have shown that Plaintiff's claims against them are barred by Qualified and Official Immunity. Accordingly, Defendants' Motion for Summary Judgment should be granted and Plaintiff's claims against Defendants should be dismissed with prejudice.

**Recommendation**

The Court recommends that Defendants' Motion for Summary Judgment (doc. 54) be **GRANTED**.  The District Court should dismiss with prejudice Plaintiff's claims against Defendants, Officer B.N. Worsham, Detective Hatfield, and Lt. Vancleave and enter Judgment for Defendants Worsham, Hatfield, and Vancleave.

SO RECOMMENDED this 1st day of June, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).